IN THE UNTED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

Carolyn Torrey, for herself and for JT, her minor child,

    Plaintiffs.

vs.

MARION CO. SCHOOL BOARD, JAMES YANCEY, WILLIAM HALDIN, BEVERLY MORRIS, JOHN MCCOLLUM, GEORGE DON RAYMOND, DIANA GREENE, and RON CRAWFORD,

    Defendants.
_____/

Case No.  5:12-cv-662-OC-10-PRL

**DEFENDANT SCHOOL BOARD OF MARION COUNTY'S MOTION TO DISMISS SECOND AMENDED COMPLAINT AND MEMORANDUM OF LAW (DISPOSITIVE MOTION)**

DEFENDANT SCHOOL BOARD OF MARION COUNTY, FLORIDA ("School Board"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 3.01, moves to dismiss with prejudice all claims stated by Plaintiffs, for failure to state a claim upon which relief may be granted, and says:

**INTRODUCTION**

1.    The School Board is the political subdivision of Florida charged with responsibility to operate and control all of the free public schools in Marion County. *See* Article IX, Section 4(b), Florida Constitution; Sections 1001.30, 1001.32(2), 1001.40, and 1001.41, Florida Statutes (2012).

2. Plaintiffs' Second Amended Complaint states four federal law claims against the Defendant School Board ("Board"): Count I for Discrimination and Retaliation under Section 504 (as to Plaintiff JT only); Count II for Discrimination and Retaliation under Section 504 (as to Plaintiff Carolyn Torrey only); Count III for Discrimination and Retaliation under the Americans with Disabilities Act (as to Plaintiff Carolyn Torrey only); and Count IV for First Amendment Violation (as to Plaintiff Carolyn Torrey only).

## FAILURE TO PLEAD WITH SPECIFICITY

3. In *Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007), the Supreme Court held that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."

4. Further, in this Court's prior Order (Doc. 31, pp. 9-10), Judge Hodges provided Plaintiffs clear direction as to what would be expected in any future amended complaints:

> The amended complaint must allege the specific statutory authorities CT claims the Defendants have violated with respect to CT, must allege precise facts showing how each Defendant (either individually or collectively) violated those statutory provisions with respect to CT, whether she is seeking relief against each individual Defendant in his or her individual or official capacity, and must allege facts showing how CT herself has been harmed. Allegations that merely copy the text of the various statutes, or speak of the Defendants' actions in general without any specific connection to the Plaintiff, will not establish a claim for relief that can survive. CT is also admonished that each of her claims for relief

must be separated out and alleged in individual, distinct claims.  Failure to file an amended complaint which complies with these directives within the allowed time will result in dismissal of this case in its entirety and without further notice…If the Plaintiffs file an amended complaint that fails to comply with Fed. R. Civ. P. 11, the Court may also consider sanctions against the Plaintiffs and/or Plaintiffs' counsel.[1]

5.  Plaintiff has failed to follow the directives of this Court and the requirements of *Twombly* and its progeny.  Therefore, all counts against the Board should be dismissed with prejudice.

## COUNT I SECTION 504 DISCRIMINATION CLAIM

6.  Count I attempts to a claim for §504 discrimination and retaliation on behalf of Plaintiff JT.  To establish a violation of §504, Plaintiff JT must allege and prove that he was discriminated against – that he was "excluded from employment or a benefit due to discrimination solely on the basis of the disability."  *Doe v. University of Md. Med. Sys. Corp.,* 50 F.3d 1261, 1265 (4th Cir.1995).  This discrimination requirement is rooted in two parts of the statute's text:  Plaintiff must prove that he has either been "subjected to discrimination" or excluded from a program or denied benefits "solely by reason of" their disability.

7.  To prove discrimination in the education context, "something more than a mere failure to provide the 'free appropriate education' required by [IDEA] must be shown." *Monahan v. Nebraska,* 687 F.2d 1164, 1170 (8th Cir.1982); *see also Lunceford v. District of Columbia Bd. of Educ.,* 745 F.2d 1577, 1580 (D.C.Cir.1984).  §504 does

---

[1] Based on the Court's previous Order (Doc. 31) and the language of Fed.R.Civ.P. 11(c), Plaintiff and her counsel are on notice they may be subjected to sanctions associated with the filing of the Second Amended Complaint (Doc. 37).  The Board formally expresses its intention to seek Rule 11 sanctions within 21 days or more after service of this Motion to Dismiss on Plaintiffs, in the event the Court does not levy such a sanction on its own initiative during the interim.

3

not create general tort liability for educational malpractice; in fact, the Supreme Court has warned against a court's substitution of its own judgment for educational decisions made by state officials. *Monahan*, 687 F.2d at 1171.

8. To succeed on a discrimination claim under §504, Plaintiff JT must allege and prove, by a preponderance of the evidence that the Defendant Board intended to discriminate against him on the basis of his disability. *Berg v. Fla. Dep't of Labor & Employment Sec.*, 163 F.3d 1251, 1255 (11th Cir. 1998). It is insufficient to make generalized assertions that the Board violated §504; even alleged violation of a state board of education regulation with respect to a plaintiff would not render a school board automatically liable, but rather, the allegations if proven must indicate behavior so severe as to demonstrate deliberate indifference. *H. v. Montgomery County Bd. of Educ.,* 784 F.Supp.2d 1247, 1265 (M.D. Ala. 2011).

9. In paragraphs 18-36 of the Second Amended Complaint, Plaintiff is asking this Court to substitute its judgment for the education decisions of the Board's employees and to find the Board liable for a mere alleged failure to provide a "free and appropriate education" to JT.[2] Plaintiff uses §504 terminology in his allegations – alleging the Board acted "intentionally and/or with deliberate indifference" – but these allegations are merely conclusory.

10. The allegations in Count I indicate the Board did not identify the student as needing §504 accommodations when the parent believed he should have been so

---

[2] The Board directs this Court to Plaintiffs' demand for relief at ¶98, where Plaintiffs request the Court "[o]rder MCSB to provide STUDENT with special education, related services, and accommodations required to assure his needs are met as adequately as the needs of non-disabled gifted students are met in Marion County School District." (Doc. 37, p. 18).

identified (in 2007, 2008, 2010, 2011, and 2012),[3] thereby failing to meet JT's needs as adequately as the needs of other students. (Doc. 37, pp. 4-5). Plaintiffs allege no facts that show this alleged failure to identify the student resulted from intentional discrimination or deliberate indifference to the student's rights; they simply allege that the failure to identify must have been the product of intentional or deliberately indifferent behavior.

11. Plaintiff's allegations assume causation without factual support. In ¶35 of the Complaint, JT lists various opportunities he allegedly missed because of the Board's failure to provide §504 accommodations. No facts are specifically alleged connecting the denial of accommodations with the missed opportunities listed in ¶35. For example,

- What tryouts did the student miss and when? The Board has no idea what school year is being discussed and what tryouts Plaintiff JT would have participated in. What accommodations are Plaintiffs suggesting could have alleviated this problem?

- When did the student allegedly pass out on campus? What accommodations did the Board deny JT that caused him to pass out?

- What "learning opportunities" did JT miss? How did the alleged discrimination of the Board cause him to miss "learning opportunities?"

- What do Plaintiffs mean when they allege JT "was denied access to

---

[3] These allegations may also be time-barred, at least in part. The statute of limitations under § 504 actions is governed by the state statute of limitations applicable to personal injury actions, which in Florida is four years. *Everett v. Cobb County School Dist.*, 138 F.3d 1407 (11th Cir. 1998); §95.11(3), Fla. Stat. (2012). Since Plaintiffs' original Complaint was filed against the Board in December 2012, allegations concerning acts or omissions occurring in 2007 and the majority of 2008 would most likely be barred.

> course choice?" This is unclear. What accommodations would have allowed JT to freely exercise "course choice?"

- How were JT's grades affected? Again, what time frame is contemplated here? From 2007 on?

12. Additionally, many of the allegations, though clothed in §504 language, appear to be stating an educational malpractice claim against the Board. (Doc. 37, p. 6)(¶35 alleges JT "missed out on learning opportunities;" ¶36 states JT has sustained "educational injury"). To the extent any part of Count I may be construed as attempting to hold the movant liable in tort for educational malpractice, this claim fails as a matter of law and should be dismissed with prejudice. *See Simon v. Celebration Company*, 883 So.2d 826 (Fla. 5th DCA 2004); *Armstrong v. Data Processing Institute, Inc.*, 509 So.2d 1987 (Fla. 1st DCA 1987)(regardless of the nomenclature, where the gravamen of a count is a cause of action for educational malpractice, that count must be dismissed because educational malpractice is not cognizable in Florida); *Monahan*, 687 F.2d at 1171 (§504 does not create general tort liability for educational malpractice).

13. Plaintiff JT's §504 discrimination claim at Count I fails to state a claim upon which relief may be granted and should be dismissed with prejudice.

**RETALIATION CLAIMS STATED IN COUNTS I, II, AND III UNDER SECTION 504 AND THE ADA**

14. In Count I, Plaintiff JT also alleges §504 retaliation against the Board (in addition to the discrimination claim addressed above). In Counts II and III, Plaintiff Carolyn Torrey alleges discrimination and retaliation pursuant to both §504 and the ADA. Although Counts II and III state that they are "discrimination and retaliation"

claims, the allegations stated in those claims concern retaliation only. Ms. Torrey does not contend she was disabled or suffered disability discrimination, only that she suffered retaliation when she advocated for her son. As such, the Board will analyze Counts II and III as retaliation claims, in conjunction with its analysis of the retaliation claim stated in Count I. The standards for determining liability under the ADA and §504 are the same. *Sutton v. Lader*, 185 F.3d 1203, 1207 n. 5 (11th Cir. 1999).

15. To establish a *prima facie* case of retaliation under §504 and Title II of the ADA, Plaintiffs must show that (1) they engaged in statutorily protected expression; (2) they suffered adverse action; and (3) the adverse action was causally related to the protected expression. *Shotz v. City of Plantation, Florida*, 344 F.3d 1161 (11th Cir. 2003); *Higdon v. Jackson*, 393 F.3d 1211 (11th Cir. 2004).

16. With respect to adverse action, prong (2) of a retaliation claim, Plaintiffs must allege facts from which a reasonable person could view the actions complained of as adverse, *i.e.*, resulting in some tangible, negative effect. *Shotz*, 344 F.3d at 1181. The ADA and §504 are not codes of civility; not everything that makes an individual unhappy is actionable adverse action. *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1449 (11th Cir. 1998).

17. With respect to causation, prong (3) of a retaliation case, the facts alleged must show a "close temporal proximity" between the protected expression and an adverse action. *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998). The Eleventh Circuit has examined this issue and found a period of one month to be sufficient to establish causation; the United States Supreme Court ruled a period of

three-four months to be insufficient to establish requisite causation. *Higdon,* 393 F.3d at 1220, citing *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453 (11th Cir. 1998); and *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268 (2001).

18.  Plaintiffs' allegations are too vague and unspecific to satisfy the "adverse impact" and causation prongs of a §504/ADA retaliation claim. Plaintiffs allege that at various times in 2007, 2008, 2010, 2011, and 2012, Carolyn Torrey asked the Board to provide JT with accommodations for various disabilities. (Doc. 37, p. 5, ¶¶25-28). Plaintiffs also allege Carolyn Torrey complained to various government agencies about the Board's refusal to find JT eligible for services for his disabilities and in January 2008, she filed a complaint for administrative due process to seek redress for the Board's failure to find JT eligible for IDEA services and accommodations. (*Id.*, pp. 6-7, ¶¶38-39).

19.  The retaliatory acts that are alleged to have followed this advocacy are generally described as follows:

- The Board paid for a school employee to file a private tort lawsuit against Carolyn Torrey in December 2008 (Doc. 37, ¶¶40, 66);
- The Board did not permit Ms. Torrey to attend meetings, to communicate with school personnel, to record meetings with school personnel, to attend a church on school grounds, and to volunteer on school grounds (*Id.*, ¶¶41, 42, 43, 47, 74, 76);
- The Board scared Ms. Torrey by calling police and threatening to have her removed from campus (*Id.*, ¶77);

- The Board made statements to "others" that impugned Ms. Torrey's reputation (*Id.*, ¶49);

- The Board had Ms. Torrey removed from a school board meeting (*Id.*, ¶50); and

- The Board disclosed JT's confidential student records to unauthorized persons in violation of federal and state law, refused to produce JT's records to Ms. Torrey, and destroyed or lost JT's records (*Id.*, ¶¶ 45, 46, 71, 72, 78).

20. With the exception of the allegation concerning initiation of a private tort lawsuit in December 2008, no facts are alleged indicating when any of these adverse acts took place. The Court is provided no facts from which it could make a finding that the events complained of occurred in close temporal proximity to the claimed advocacy of the parent. At best, the Court could conclude the parent filed an administrative complaint in January 2008 and the Board paid for a private tort lawsuit filed in December 2008, almost a year later. This would not satisfy the requirement of close temporal proximity outlined in federal jurisprudence, *supra*.

21. In addition, some of the Board's "acts" Plaintiff alleges to be adverse are not, in fact, adverse. As evidence of adverse impact, Plaintiff alleges she was not allowed to record meetings with school personnel. (Doc. 37, ¶¶43, 74). Yet she had no such right. In Florida, it is a crime to intercept or record a "wire, oral, or electronic communication," unless all parties to the communication consent, where the parties to the conversation have a reasonable expectation of privacy. *See* §934.03, Fla. Stat. (2012). Similarly, decisions rendered in the due process context in Florida indicate

9

parents generally do not have the right to record meetings concerning their children. S*ee F.C. v. School Board of Miami-Dade County*, Case No. 07-2315E (Fla. Division of Administrative Hearings 2007), *per curiam affirmed*, 998 So.2d 614 (Fla. 3d DCA 2008)(the parent of student with a disability has no right to take a court reporter to an IEP meeting); and *Jackson County School Board v. A.L. and P.L.B.,* Case No. 12-2562E (Fla. Division of Administrative Hearings 2012)(citing an opinion of the Office of Special Education, the tribunal found that parents do not have a blanket right to record IEP meetings and school districts may limit, prohibit, or otherwise regulate the use of tape recorders at these meetings).[4] Refusing Plaintiff's request to record meetings cannot qualify as "adverse" for purposes of a retaliation claim, when she did not have the right to record in the first place.

22.     This holds true for Plaintiff's claim that she was denied the right to volunteer in the school system. (Doc. 37, ¶47). Plaintiff has no "right" to be a volunteer. *See* §1012.01(5)(volunteers in the public school system are appointed by a district school board or its designee). In fact, parents have no constitutional right to be on school premises. *Porter v. Duval County School Bd.*, 2010 WL 1252177 at *7 (M.D. Fla. 2010), *citing Lovern v. Edwards*, 190 F.3d 648, 655-656 (4th Cir. 1999)("School officials have the authority to control students and personnel on school property, and also have the authority and responsibility for assuring that parents and third parties conduct themselves appropriately while on school property."). A school administration's authority to control activities on school property includes preventing parent access when necessary to maintain order and prevent disruptions to the

---

[4] Ms. Palmer, counsel for Plaintiffs in this case, was counsel of record for the Respondents in *Jackson County Sch Bd. v. A.L. and P.L.B.*

educational environment. *See Madrid v. Anthony*, 510 F.Supp.2d 425 (S.D. Tex. 2007), *cited with approval in Porter*, 2010 WL 1252177 at *7.

23. Plaintiffs' retaliation claims are not adequately plead. Even assuming Plaintiffs have sufficiently alleged facts showing adverse impact, which they have not, Counts I, II, and III are utterly lacking in facts establishing a close temporal proximity between the parent's advocacy and the alleged adverse action. All retaliation claims raised by Plaintiffs against the Board should be dismissed with prejudice.

**COUNTS I, II, AND III ARE AN IMPERMISSIBLE ATTEMPT TO SEEK DAMAGES FOR VIOLATIONS OF THE IDEA**

24. In the first three counts, Plaintiffs attempt to state claims for discrimination and retaliation under §504 and the ADA. These counts appear to be IDEA claims disguised as §504 and ADA claims. *See C.P. v. Leon County School Board*, 2005 WL 2133699 at *3 (N.D. Fla. 2005)("Plaintiff's claims are simply IDEA claims dressed in Rehabilitation Act or ADA clothing."). An ADA claim may not lie for violations of the IDEA. *Dunn-Fischer v. District School Bd. of Collier County*, 2013 WL 3832449 at *4 (M.D. Fla. 2013). This is true for §504 claims also. *See Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 125-126 (1st Cir. 2003)(observing that if federal policy precludes money damages for IDEA claims, it would be odd for damages to be available under other vehicles such as §504, where the underlying claim is an IDEA violation).

25. Throughout the Second Amended Complaint, Plaintiff Carolyn Torrey alleges she engaged in protected activities "seeking eligibility and appropriate services and accommodations" for her son's disability. (Doc. 37, ¶70). In ¶¶ 38-39 of the Complaint, Carolyn Torrey alleges she complained to various government agencies

about the Board's alleged "refusal to find STUDENT eligible for services for his disabilities" and she filed a complaint for administrative due process under the IDEA to challenge the Board's failure to find JT eligible for IDEA services and accommodations. (*Id.*). Further, in the plea for relief, at ¶98, Plaintiffs request that the School Board be ordered to provide Plaintiff JT with "special education, related services, and accommodations." The terms "special education" and "related services" are terms of art employed to describe the types of services for students with disabilities provided under the Individuals with Disabilities Education Act. *See* 34 C.F.R. §300.39 (IDEA regulation defining "special education"); and 34 C.F.R. §300.34 (IDEA regulation defining "related services"). The administrative action Plaintiff alleges she filed on her son's behalf in 2008 sought to compel the Board to qualify the student for IDEA services and accommodations; this was not a proceeding available to her under §504. (Doc. 37, p. 7, ¶39). Plaintiff believes her son should have been identified as needing special education under the IDEA and this suit is an attempt to hold the Defendant Board liable where other efforts to compel this result have failed.[5]

26.   No private right of action for compensatory and punitive damages exists pursuant to the Individuals with Disabilities Education Act ("IDEA"). *Ortega v. Bibb County Sch. Dist.*, 397 F.3d 1321, 1325-26 (11th Cir. 2005). The IDEA's primary purpose is to ensure a free and appropriate public education, not to serve as a tort-like mechanism for compensating disabled children and their families for their pain and

---

[5] Plaintiff Carolyn Torrey alleges she filed for administrative due process under the IDEA in January 2008. (Doc. 37, ¶58). She also alleges a final ruling was reached in the administrative due process, although she fails to include any details about that ruling. (Doc. 37, ¶59). However, given her allegations throughout the Second Amended Complaint, and specifically the plea for relief in ¶98, it is clear that in 2008, this ruling did not go the way Plaintiff desired.

suffering where a free and appropriate public education is not provided. *See Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 124-126 (1st Cir. 2003); *Chambers v. Sch. Dist. of Philadelphia Bd. of Education*, 587 F.3d 176, 186 (3rd Cir. 2009)(every circuit that has addressed this issue, including the 11th Circuit, has held that compensatory and punitive damages are not available under the IDEA, consistent with the Supreme Court's decision in *School Committee of the Town of Burlington v. Dept. of Ed. of Massachusetts*, 471 U.S. 359 (1985)).

27.   Plaintiffs should not be allowed to pursue their §504 and ADA claims in Counts I through III as these claims are an impermissible attempt to seek damages for purported violation of the IDEA.   Counts I through III should be dismissed with prejudice.

**COUNT IV FIRST AMENDMENT CLAIM**

28.   It is unclear by what procedural mechanism Plaintiff Carolyn Torrey attempts to bring her First Amendment retaliation claim against the Board.  Plaintiff makes no reference in the Count IV allegations to an enabling statute, such as 42 U.S.C. §1983, nor does she properly allege the *prima facie* elements of a judicially implied cause of action directly under authority of the Constitution, as required in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

30.   A *Bivens* action, which is disfavored, allows a plaintiff to vindicate certain constitutionally protected rights through an implied cause of action against federal officials in their individual capacities. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Chiang v. Skeirik*, 582 F.3d 238 (1st Cir. 2009).  Since *Bivens* actions are only available for claims

against individuals, Plaintiff cannot bring a *Bivens* claim against the Board for violation of her First Amendment rights.

31. The only enforcement mechanism left to Plaintiff is §1983, yet she has failed to make any mention of this statute in the Second Amended Complaint. This failure alone should subject her Count IV claim against the Board to immediate dismissal, given the previous Order's admonition to include specific statutory authorities in any subsequent complaint. (Doc. 31, p. 9). However, the Board will analyze Plaintiff's First Amendment claim as though it had been raised under §1983.

32. Section 1983 of Title 42 of the United States Code provides a remedy against any person who, under color of any statute, ordinance, regulation, custom, or usage of any state subjects a citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws. 42 U.S.C. §1983 (1996).

33. Local governments may not be held liable for constitutional deprivations on a theory of *respondeat superior*. *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Rather, the government entity may be held liable only if the constitutional deprivation results from an official government policy or a custom or practice so pervasive and well-settled that it assumes the force of law. *See id.* at 694; *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997).

34. Plaintiff fails to allege that the Board maintained any official policy or pervasive custom or practice to retaliate against parents who advocate for their disabled children in the school system.

35. Further, Plaintiff fails to allege sufficient facts from which the Court could conclude she engaged in speech or acts that were protected by the First Amendment. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). The elements of a First Amendment retaliation claim are as follows: first, a plaintiff must establish that his speech or act was constitutionally protected; second, that the retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech. *Id.*

36. The First Amendment does not protect all speech, only speech on a matter of public concern. *Maggio v. Sipple*, 211 F.3d 1346, 1351-1352 (11th Cir. 2000). Plaintiff repeatedly alleges she was the subject of retaliation because she petitioned the Board to provide her son with appropriate services and accommodations for his disabilities. (Doc. 37, ¶¶82, 84). A parent's complaint about matters involving the parent's child do not constitute a matter of public concern giving rise to a First Amendment claim for retaliation. *See Porter v. Duval County School Bd.*, 2010 WL 1252177 at *8 (M.D. Fla. 2010)(parent's complaint about alleged sexual harassment of her daughter on the school bus was not protected by the First Amendment); *see also Landstrom v. Ill. Dep't of Children & Family Servs.*, 892 F.2d 670, 680 (7th Cir. 1990)(parental complaints about the questioning of their children by school officials in a child abuse investigation did not involve matters of public concern); and *Rodgers v. Duncanville Indep. School Dist.*, 2005 WL 770712 at *3 (N.D. Tex. 2005)(parent's complaints to school officials about treatment of his son did not constitute a matter of public concern).

37. Plaintiff has failed to allege facts from which the Court could conclude that her speech constituted a matter of public concern. This alone is fatal to her First Amendment claim. Additionally, as noted above in the analysis of Plaintiff's §504/ADA retaliation claims, she alleges she was deprived of certain "rights" in retaliation for her advocacy, but these so-called rights do not exist. Plaintiff did not have a right to record school personnel; she did not have the right to volunteer; parents have no constitutional right to be on a campus. Depriving Plaintiff of the opportunity to record, to volunteer, or to be on campus could not have had an adverse affect on her speech, since these were never rights the law afforded her.

38. Plaintiff's First Amendment claim is not properly asserted via the mechanism of §1983, she fails to allege a policy or custom of the Board leading to the complained-of constitutional deprivation, her advocacy speech on behalf of her son does not constitute a matter of public concern justifying First Amendment protection, and she alleges the Board deprived her of various rights in retaliation when in fact, she never had those rights in the first place. Her claim at Count IV should be dismissed with prejudice.

WHEREFORE, the Defendant School Boards request that the Court enter an order dismissing with prejudice all claims against the Board.

16

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have filed the foregoing on August 16, 2013, by using the CM/ECF filing system and via email to Rosemary N. Palmer, Esq., 5260 Pimlico Drive, Tallahassee, FL 32309, at floridalawlady@gmail.com.

By: /s/ Amy J. Pitsch
**USHER L. BROWN, ESQUIRE**
Florida Bar Number 321461
ulbrown@orlandolaw.net
**AMY J. PITSCH, ESQUIRE**
Florida Bar Number 338280
apitsch@orlandolaw.net
**VIVIAN P. COCOTAS, ESQUIRE**
Florida Bar Number 841846
vcocotas@orlandolaw.net
**BROWN, GARGANESE, WEISS & D'AGRESTA, P.A.**
111 N. Orange Avenue, Suite 2000
Post Office Box 2873
Orlando, Florida  32802-2873
Phone: (407) 425-9566
Facsimile: (407) 425-9596
Attorneys for Defendants MARION CO. SCHOOL BOARD, YANCEY, HALDIN, MORRIS, MCCOLLUM, RAYMOND, GREENE and CRAWFORD